UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SPEEDWAY LOANS, INC. | § | |
| | § | |
| v. | § | CIVIL NO. 4:21-CV-575-SDJ |
| | § | |
| MOATAZ IBRAHAM HASSAN, ET | § | |
| AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Speedway Loans, Inc.'s Motion for Default Judgment. (Dkt. #30). Defendants Moataz Ibraham Hassan, Tyler Grant Horn, Timothy Ray Horn, Jacob Andrew Hernandez, and Manal El-Ghorab have failed to respond, and the deadline for doing so has passed. Having considered the motion, the record, and the applicable law, the Court concludes that the motion should be **GRANTED in part and DENIED in part.**

### I. BACKGROUND

Speedway filed its original complaint and amended complaint on July 22, 2021. Hassan and El-Ghorab were served on July 28, 2021, making their answers due August 18, 2021. (Dkt. #9, #10). Tyler and Timothy Horn were served on August 24, 2021, making their answers due September 14, 2021. (Dkt. #11, #12). Hernandez was served on October 13, 2021, making his answer due November 3, 2021. (Dkt. #24). To date, none of the Defendants have filed an answer or otherwise made an appearance in this case. Upon Speedway's request, the Clerk entered default against all Defendants pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. #15, #16, #18, #19, #28). Speedway then filed a motion for default judgment.

Because Defendants have failed to respond to Speedway's complaint and default-judgment motion or to otherwise appear in this case, the Court accepts the following allegations as true. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citing, among others, *Ohio Cent. R.R. Co. v. Cent. Tr. Co. of N.Y.*, 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561 (1889))); *see also* L.R. CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

Speedway is a credit access business that offers loans secured by the borrower's motor vehicle title. As part of the loan process, Speedway receives a perfected security interest in the pledged motor vehicle. If the borrower defaults on the loan, Speedway can repossess and foreclose on the motor vehicle.

Hassan, Timothy Horn, and a third, unidentified partner allegedly spearheaded a scheme to defraud Speedway and other lenders. Car dealerships flagged Hassan as a known vehicle exporter and prohibited him from directly purchasing luxury vehicles such as Mercedes Benz GLS 450s and Range Rover HSEs, so Hassan engaged Tyler Horn, Timothy Horn, and Hernandez as "straw buyers." Initially, the straw buyers purchased the vehicles with cash; however, as dealerships grew stricter, Hassan directed the straw buyers to finance the purchases.

After they received title to the vehicles, Tyler Horn, Timothy Horn, and Hernandez obtained loans from Speedway, using the vehicles as collateral. Hassan and Timothy Horn provided instructions on how to successfully navigate Speedway's loan process. Once the loan was approved, the scheme participants would split the proceeds. Finally, Defendants gave the vehicles to Hassan and Timothy Horn, who coordinated their export for sale in foreign countries. Hassan stored the vehicles in warehouses and ensured they were exported before Speedway could perfect its security interest. Thus, when the borrowers defaulted on their loans, Speedway could not repossess the vehicles. To date, all of the loans Speedway provided to Defendants have defaulted, and Speedway has not received any payment.

Pursuant to this scheme, Defendants obtained three loans from Speedway and unsuccessfully tried to take out two additional loans. On May 8, 2019, an individual identified only as Jane Doe obtained a $25,000 loan using a Range Rover HSE as collateral. Jane Doe defaulted on the loan less than two months later. Jane Doe had listed Hassan as a reference for her loan, and Hassan allegedly instructed her to take out the loan. On May 28, 2019, Timothy Horn attempted to obtain a loan, but Speedway denied his application because he had filed for bankruptcy. The next day, Timothy Horn transferred ownership of a Mercedes Benz GL 450 to Tyler Horn. Tyler Horn applied for and received a $25,000 loan using that vehicle as collateral. Tyler Horn defaulted on the loan. On June 4, 2019, Hassan and his wife, El-Ghorab, offered another vehicle to Speedway as collateral for a $10,000 loan, but Speedway denied their application. On September 9, 2019, Hernandez obtained a $12,000 loan using a

Mercedes Benz GLS 450 as collateral. Hernandez defaulted on the loan, and Speedway discovered that Hernandez is also a blacklisted vehicle buyer.

As a result of the foregoing events, Speedway filed this lawsuit, asserting three claims under the civil enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), against all Defendants. Speedway also asserts causes of action against the Horns and Hernandez for breach of contract, account stated, and fraud. Finally, Speedway asserts causes of action against Hassan for conversion and tortious interference with existing contracts.[1] Speedway seeks damages in the amount of $355,110.15 for Counts 1, 2, and 3; $73,187.94 for Counts 4 and 5; $1,007,820 for Count 6; $986,74.10 for Count 7; and $896,375.88 for Count 8. Speedway also seeks prejudgment and postjudgment interest, costs, and attorney's fees.

Due to Defendants' failure to respond to the lawsuit, which was filed more than one year ago, Speedway moved for default judgment.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. The Fifth Circuit requires a three-step process for securing a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a defendant has failed to plead or

---

[1] Several of Speedway's causes of action arise under federal law, and the Court has supplemental jurisdiction over the remaining state-law claims. Therefore, the Court has jurisdiction over the subject matter of this lawsuit. 28 U.S.C. §§ 1331, 1367.

otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Second, an entry of default may be entered by the clerk when the default is established. FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Third, after an entry of default, a plaintiff may apply to the clerk or the court for a default judgment. FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Rule 55(b)(2) grants a district court "wide latitude," and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). A defendant, by its default, admits a plaintiff's well pleaded allegations of fact. *Nishimatsu,* 515 F.2d at 1206.

### III. DISCUSSION

In determining whether to enter a default judgment, courts utilize a three-part analysis: (1) "whether the entry of default judgment is procedurally warranted"; (2) "whether a sufficient basis in the pleadings based on the substantive merits for judgment exists"; and (3) "what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing, among others, *Lindsey*, 161 F.3d at 893). The Court addresses each issue in turn.

### A. Default Judgment Is Procedurally Warranted

The Court must first consider whether the entry of default judgment is procedurally warranted. *Lindsey*, 161 F.3d at 893. Relevant factors in making this determination include:

[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

On balance, these factors weigh in favor of granting default judgment against Defendants. When a defendant defaults, it admits to the plaintiff's well-pleaded allegations of fact, so there are no material issues of fact in dispute. *Nishimatsu,* 515 F.2d at 1206. Speedway's interests are prejudiced because Defendants have not answered the complaint or otherwise defended, bringing the adversarial process to a halt. *See United States v. Fincanon*, No. 7:08-CV-61, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (citing *Lindsey*, 161 F.3d at 893). Defendants were served with process and failed to respond despite having ample notice and sufficient time to do so. The grounds for default are clearly established, and a default judgment is not unusually harsh.

As to the remaining factors, no evidence of mistake or excusable neglect exists. Nor does there appear to be any basis on which the Court would be obligated to set aside the default. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (describing the equitable principles a district court evaluates when considering whether good cause exists to set aside a default, including "whether the default was willful, whether setting it aside would prejudice the adversary, [] whether a meritorious defense is presented," and whether "the defendant acted expeditiously to correct the default" (cleaned up)). For these reasons, default judgment is procedurally appropriate here.

**B. Sufficient Basis in the Pleadings to Enter Default Judgment**

The Court must next consider whether Speedway's complaint provides a sufficient factual basis to enter default judgment. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment."). In determining whether there is a sufficient basis in the pleadings for judgment, courts in the Fifth Circuit "draw meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required.[2] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Applying this standard, the Court now considers the sufficiency of Speedway's claims.

**i. 18 U.S.C. § 1962(a), (c), and (d)**

Speedway asserts several claims against Defendants under RICO's civil enforcement provisions. First, Speedway alleges that Defendants violated 18 U.S.C. § 1962(c). "Subsection 1962(c) prohibits persons employed by or associated with any

---

[2] To be clear, this low threshold is less rigorous than the plausibility standard under Rule 12(b)(6). *Wooten*, 788 F.3d at 498 n.3 ("declin[ing] to import Rule 12 standards into the default-judgment context" because "a default is the product of a defendant's *inaction*" rather than the invocation of Rule 12's defense).

enterprise from conducting or participating in the enterprise's affairs through a pattern of racketeering." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir. 1996). Second, Speedway alleges that Defendants violated Subsection 1962(a), which prohibits a person who has received income from a pattern of racketeering activity from investing that income in an enterprise. *N. Cypress Med. Ctr. Op. Co. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015). Third, Speedway alleges that Defendants violated Subsection 1962(d), which prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c).

RICO claims under all three subsections have three threshold elements: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993) (per curiam). The Court concludes that Speedway has not adequately alleged either a pattern of racketeering activity or an enterprise and thus is not entitled to default judgment on any of its RICO causes of action.

The pattern of racketeering activity element requires factual allegations showing that the defendant engaged in two or more acts of racketeering activity enumerated in 18 U.S.C. § 1961(1) and that the predicate acts form a pattern because they are related to each other and have continuity. *See Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:11-CV-870, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (citing, among others, *Burzynski*, 989 F.2d at 742). Speedway lists seven alleged acts that appear in Section 1961(1)'s definition of racketeering activity: (1) wire fraud; (2) bank fraud; (3) money laundering; (4) extortion; (5) engaging in monetary transactions in

8

property derived from specified unlawful activity; (6) transportation of stolen vehicles; and (7) sale or receipt of stolen vehicles. (Dkt. #2 ¶¶ 44–46). But Speedway must do more than simply list alleged predicate crimes—it "must also plead specific facts that, if true, would establish that each predicate act was in fact committed by the defendants." *Gordon v. Neugebauer*, No. 1:14-cv-0093, 2014 WL 12819902, at *7 (N.D. Tex. Nov. 12, 2014); *see also Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989) ("'Racketeering activity'" is defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead.").

Apart from the aiding and abetting offenses, Speedway does not identify which Defendants allegedly committed which predicate acts and does not address the elements of each predicate act, leaving the Court to sift through the pleadings in an attempt to find a pattern of racketeering activity. The Court need not engage in this exercise, however. Even if Speedway established that each Defendant engaged in two or more related predicate acts, it has not adequately alleged that the acts have continuity.

There are two ways to establish continuity: "(1) a closed period of repeated conduct; or (2) an open-ended period of conduct that by its nature projects into the future with a threat of repetition." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quotation omitted). Speedway complains of actions occurring from May 2019 to September 2019. *See* (Dkt. #2 ¶ 19). Four months does not constitute the "substantial period of time" required for a finding of closed-ended continuity.

*Malvino*, 840 F.3d at 231–32 (holding that a period of five months was too short to establish closed-ended continuity). Speedway attempts to get around this conclusion by alleging that the conduct began "as early as 2010." (Dkt. #2 ¶ 42). But the only support for this contention is the allegation that Hassan solicited a title loan on December 20, 2010, and Speedway denied the loan because the vehicle's title was not in his name. (Dkt. #2 ¶ 20 n.5). This assertion does not support a finding that Hassan engaged in a predicate act in 2010 and does not establish that any other Defendants have been engaged in a pattern of racketeering activity since 2010. Thus, Speedway has not pleaded sufficient facts to support a finding of closed-ended continuity.

"An open-ended period of conduct involves a threat of continued racketeering activity and may be established by a showing that there is a specific threat of repetition extending indefinitely into the future, or that the predicates are a regular way of conducting a defendant's ongoing legitimate business." *Malvino*, 840 F.3d at 232 (cleaned up). Here, there is no allegation that the predicate acts were related to any legitimate business. And Speedway has not alleged any facts supporting a finding of a specific threat of repetition extending indefinitely into the future. The last act of which Speedway complains occurred in September 2019. Speedway did not file this lawsuit until July 22, 2021. Speedway does not allege that Defendants committed a single predicate act in the nearly two years between the last complained-of action and the filing of the lawsuit.

Speedway argues that there is a continued threat of repetition because "the vehicle ownership history of [Defendants] . . . indicate[s] that Speedway is not the

only recent victim of the enterprise." (Dkt. #2 ¶ 42). In essence, Speedway asks the Court to assume that because certain Defendants purchased multiple luxury vehicles, Defendants must have offered those vehicles to other lenders as collateral for loans that defaulted and then concealed the vehicles from those unidentified lenders. But stripped of Speedway's speculation, which is inadequate to warrant default judgment, the factual allegations before the Court undermine any notion of continuity. Speedway alleges that Hernandez purchased two Mercedes Benz GLS 450s within three months. (Dkt. #2 ¶ 24 n.7). Presumably, one was the vehicle pledged as collateral for the Speedway loan. Thus, Hernandez only purchased one additional luxury vehicle, and he did so within three months of the other purchase. Speedway does not allege that Hernandez used the second vehicle as collateral for a loan on which he then defaulted. Speedway also states that the Horns purchased five luxury vehicles within less than three years. One of these vehicles was pledged as collateral for a Speedway loan, and Speedway does not include a single allegation regarding the use of the remaining four vehicles or the years in which they were purchased. Speedway does not allege that any Defendant purchased a luxury vehicle after September 9, 2019. The Court finds that Speedway has not alleged an open-ended period of conduct and, thus, has not alleged a pattern of racketeering activity.

Speedway also has not sufficiently alleged the existence of an enterprise. The enterprise element requires the plaintiff to plead facts that show the existence of an association-in-fact enterprise or a legal entity. *Burzynski*, 989 F.2d at 743. Speedway argues that Defendants formed an association-in-fact enterprise. (Dkt. #2 ¶ 38). "An

association-in-fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization[,] and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quotation omitted).

Here, Speedway's claim fails at the first element. To constitute a RICO enterprise, an entity "must exist for purposes other than just to commit predicate acts." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019). Speedway claims that the alleged enterprise was formed "for the common and continuing purpose of acquiring vehicles and loans on false pretenses for use in exporting and selling luxury vehicles abroad." (Dkt. #2 ¶ 38). This assertion does not establish that the enterprise had an existence separate and apart from the alleged racketeering activity. *See Gordon*, 2014 WL 12819902, at *8 (finding that the plaintiff had not alleged the existence of an enterprise separate and apart from the racketeering activity where the complaint stated that "the purpose of the enterprise was to detain Plaintiff and other similarly situated individuals in order to carry out insurance fraud"); *Aubrey v. D. Mag. Partners, L.P.*, No. 3:19-CV-0056, 2020 WL 619839, at *4 (N.D. Tex. Feb. 10, 2020) (holding that the plaintiffs had not alleged the existence of an enterprise where the only purpose of the alleged association-in-fact enterprise was to commit a predicate act). Neither Speedway's vague allegations regarding social connections among the Horns, Hernandez, and Hassan, nor its statement that Hassan and El-Ghorab are married alters this conclusion because

Speedway still does not adequately allege an existence separate from the alleged racketeering activity. For this additional reason, Speedway has failed to plead a claim under Subsections 1962(a), (c), and (d), and the Court will deny Speedway's motion for default judgment on these claims.[3]

### ii. Breach of contract

Next, Speedway seeks default judgment on its breach-of-contract claim against Tyler Horn, Timothy Horn, and Hernandez. To succeed on a breach-of-contract claim, a plaintiff must establish: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

In its complaint, Speedway pleads facts sufficient to state a claim for breach of contract under Texas law only as to Tyler Horn and Hernandez. Speedway pleads the existence of valid loan contracts between Speedway and Tyler Horn and between Speedway and Hernandez. *See* (Dkt. #2 ¶¶ 26, 29). But Speedway explicitly pleads that it did not enter into a loan contract with Timothy Horn. *See* (Dkt. #2 ¶ 26 ("[D]ue to a recent bankruptcy filing by Timothy Horn, his loan application was denied.")). As to performance, Speedway pleads that it provided loans to Tyler Horn and Hernandez. *See* (Dkt. #2 ¶¶ 26, 29). Speedway alleges that Tyler Horn and Hernandez breached the loan contracts by failing to make payments and defaulting on the loans. *See* (Dkt. #2 ¶¶ 27, 29). Finally, Speedway pleads that it suffered

---

[3] Speedway's claim under Subsection 1962(d) also fails because "[t]he failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [the plaintiff] cannot plead a conspiracy to violate either section." *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) (quotation omitted).

13

damages in the form of lost loan proceeds and the loss of collateral as a result of Tyler Horn's and Hernandez's failure to pay off their loans. (Dkt. #2 ¶¶ 31, 76).

Based on the well-pleaded allegations, Speedway has established each element of its claim for breach of the loan contracts between Speedway and Tyler Horn and between Speedway and Hernandez. Speedway is therefore entitled to default judgment against Tyler Horn and Hernandez for breach of contract. Because Speedway has not pleaded the existence of a contract between Speedway and Timothy Horn, the Court denies Speedway's motion for default judgment on its breach-of-contract claim against Timothy Horn.

### iii. Account stated

Speedway asserts an account-stated claim against Tyler Horn, Timothy Horn, and Hernandez. A party is entitled to relief on a claim for account stated when: (1) transactions between the parties give rise to the indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixes the amount due; and (3) the indebted party makes a promise, express or implied, to pay the indebtedness. *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Speedway's pleadings on this claim falter because Speedway does not allege "agreement on the amount of damages by both parties." *Advanced Gas & Equip., Inc. v. Airgas USA, LLC*, No. 14-16-00464, 2017 WL 3442430, at *3 (Tex. App.—Houston [14th Dist.] Aug. 10, 2017, pet. denied); *see also Paine v. Moore*, 464 S.W.2d 477, 480 (Tex. Civ. App.—Tyler 1971, no writ) ("An account stated requires an absolute acknowledgment or admission of a sum certain by the debtor to the

creditor."). Speedway never alleges that it informed any of the Defendants of the amount owed and that they expressly or impliedly agreed that the amount owed was correct. Rather, in both the amended complaint and in the declaration in support of its motion for default judgment, Speedway merely recites the elements of an account-stated claim with no elaboration. And, as to Timothy Horn, there is an additional basis for finding that Speedway has not adequately pleaded a claim for account stated. As discussed above, Speedway has not alleged that a transaction took place between Speedway and Timothy Horn or that Timothy Horn was indebted to Speedway. For these reasons, the Court denies Speedway's motion for default judgment on its account-stated claim.

### iv. Conversion

Next, Speedway seeks default judgment on its conversion claim against Hassan. The elements of a conversion claim under Texas law are: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *J.P. Morgan Chase Bank, N.A. v. Tex. Cont. Carpet, Inc.*, 302 S.W.3d 515, 536 (Tex. App.—Austin 2009, no pet.). Demand and refusal—the third and fourth elements—are not required if demand would have been useless, if the possessor's acts amounted to a clear repudiation of the owner's rights, or if the conversion is complete. *Bures v. First Nat'l Bank, Port Lavaca*, 806 S.W.2d 935, 938 (Tex. App.—Corpus Christi-Edinburg 1991, no writ); *First State Bank, N.A.*

*v. Morse*, 227 S.W.3d 820, 827 (Tex. App.—Amarillo 2007, no pet.). Finally, "[a] plaintiff must prove damages before recovery is allowed for conversion." *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997) (per curiam).

As an initial matter, the Court finds that Speedway has adequately alleged that demand would have been useless and that Hassan's actions in selling the vehicles overseas constituted a clear repudiation of Speedway's rights. So, demand and refusal are unnecessary.

Moving to the first element, Speedway alleges that as Defendants defaulted on their loans, Speedway became legally entitled to possess the vehicles pledged as collateral. (Dkt. #2 ¶ 80). Tyler Horn, Jane Doe, and Hernandez all defaulted on their loans. (Dkt. ¶¶ 27–29). Therefore, Speedway was entitled to possession of the vehicles. As to the second element, Hassan allegedly took the vehicles from the straw borrowers without Speedway's authorization. (Dkt. ¶¶ 18, 27, 29). Hassan then exercised dominion and control over the vehicles by storing them in warehouses and exporting them for sale in foreign countries. (Dkt. #2 ¶¶ 20, 30). This act prevented Speedway from repossessing the vehicles and thus exercising its rights as the entity legally entitled to possess the vehicles. (Dkt. #2 ¶ 21). Finally, Speedway adequately pleaded that it was injured by Hassan's conversion because the straw borrowers defaulted on their loans and Speedway did not receive the value of the vehicles pledged as collateral in case of default. Speedway is therefore entitled to default judgment on its conversion claim against Hassan.

### v. Tortious interference with existing contracts

Speedway also brought a claim against Hassan for tortious interference with existing contracts. To state such a claim, Speedway must allege: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damage or loss. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Speedway alleges an existing contract in the form of its loan agreements with Tyler Horn, Jane Doe, and Hernandez. Speedway pleads that Hassan willfully and intentionally interfered with these contracts by "wrongfully exercis[ing] dominion and control over" the vehicles pledged as collateral for those loans. (Dkt. #2 ¶ 82); *see also* (Dkt. #2 ¶ 21 ("By exploiting the process, [Hassan] was able to . . . deny Speedway the ability to recover its collateral")); (Dkt. #2 ¶ 30 ("[D]uring the time Speedway attempted repossession, [Hassan] . . . stored the [collateral vehicles] in warehouses, where they could not be located, and ultimately exported the [v]ehicles for sale in foreign countries.")). Speedway also alleges that this interference proximately caused actual damage or loss because when the borrowers defaulted on their loans, Speedway was unable to locate and repossess the vehicles.

For these reasons, the Court finds that Speedway is entitled to default judgment on its claim against Hassan for tortious interference with existing contracts.

17

### vi. Fraud

Finally, Speedway brings a fraud claim against Tyler Horn, Timothy Horn, and Hernandez. Texas law recognizes two types of common-law fraud: (1) simple fraud, or fraudulent misrepresentation, and (2) fraudulent inducement. *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F.Supp.3d 633, 660 (W.D. Tex. 2019). Based on Speedway's allegations, Speedway appears to allege fraudulent misrepresentation. The elements of fraudulent misrepresentation are: (1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intent that it should be acted upon by another party; (5) relied upon by the other party; and (6) causing injury. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Speedway alleges that the Horns and Hernandez made material misrepresentations when they represented that they owned vehicles pledged as security for their loans and when they provided the VINs and titles for the vehicles. These representations were material because Speedway makes loans in exchange for a security interest in borrowers' motor-vehicle titles. Speedway alleges that the representations were false because, among other things, Defendants used cloned VINs and would transmit title to the vehicles to Hassan and/or Timothy Horn. (Dkt. #2 ¶¶ 18, 24, 27). Speedway contends that Defendants knew the representations were false or made them recklessly because they knew they were tendering the vehicles to Hassan and Timothy Horn instead of retaining them and, thus, knew that Speedway would be unable to recover the vehicles when Defendants

defaulted. (Dkt. #2 ¶¶ 18, 27, 29). And Defendants made the misrepresentations with the intent that Speedway rely upon them by extending loans to them. But Speedway relied on the misrepresentations only as to Tyler Horn and Hernandez, the two borrowers who successfully obtained Speedway loans. Speedway did not rely on Timothy Horn's misrepresentation, as it declined his loan application. Finally, Speedway was injured because it lost its expected loan proceeds and could not repossess the vehicles used to secure the loans.

Based on the well-pleaded allegations, Speedway has established each element of its fraud claim against Tyler Horn and Hernandez. Speedway is therefore entitled to default judgment against Tyler Horn and Hernandez for common-law fraud. Because Speedway has not pleaded that it relied on any misrepresentations made by Timothy Horn, however, the Court denies Speedway's motion for default judgment on its fraud claim against Timothy Horn.

* * *

In sum, the Court grants Speedway's motion for default judgment against Tyler Horn and Hernandez as to these Defendants' liability for breach of contract and fraud. The Court also grants default judgment against Hassan as to his liability for conversion and tortious interference with existing contracts. The Court denies Speedway's motion for default judgment on its civil RICO claims and state-law claim for account stated. Because Speedway's only claims against El-Ghorab are its RICO claims, Speedway is not entitled to default judgment against El-Ghorab. Finally, the Court finds that Speedway is not entitled to default judgment on any of its claims against Timothy Horn.

## C. Appropriateness of Relief

The Court next considers whether Speedway is entitled to the damages it seeks. In the context of a default judgment, damages are normally not awarded without an evidentiary hearing. *James*, 6 F.3d at 310. But this general rule does not apply—that is, a hearing is unnecessary—when the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *Id.* Courts in this circuit routinely find that copies of contracts, purchase orders, invoices, and statements of projected costs, together with computations and affidavits, are a sufficient evidentiary basis for a damages award. *See, e.g.*, *Crown Distrib. LLC v. Ice Suppz, LLC*, No. 3:21-CV-1052-B, 2022 WL 1524119, at *6 (N.D. Tex. May 13, 2022).

### i. Damages

For the claims on which Speedway is entitled to default judgment, Speedway seeks the following amounts: $73,187.94 plus interest (breach of contract); $1,007,820.00 (conversion); $986,740.10 (tortious interference); and $896,375.88 (fraud). Though Speedway claims that it pleaded damages "as sums certain," (Dkt. #30 ¶ 22), the Court cannot determine how Speedway calculated the amounts it requests. Its calculations are not explained in either its motion for default judgment or its declarations in support, and Speedway did not submit any underlying evidence, such as the loan contracts. Speedway submitted only an affidavit from Speedway's Legal Manager, which merely reiterates that Defendants owe Speedway the amounts sought in the complaint and does not explain how the damages were calculated.

Because the amount of damages cannot be determined with mathematical calculation by reference to the pleadings and supporting documents, the Court is unable to award damages at this time. The Court will require Speedway to provide an explanation detailing the sums requested as well as any supporting facts and evidence. The Court also notes that, under Texas law, "for one injury, there can be only one recovery." *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 916 (Tex. App.—Dallas 2014, pet. denied). "[T]he plaintiff has the right to a judgment on the theory entitling him to the greatest or most favorable relief." *Id.* (quotation omitted). It appears to the Court that with respect to some claims, Speedway may be seeking multiple recoveries for the same injury. Speedway should be prepared to address this issue in its supplemental briefing on damages and at the damages hearing.

For these reasons, the Court denies without prejudice Speedway's motion for default judgment as to its request for damages, pending Speedway's submission of a renewed, supplemental motion on damages and supplementation of the record at a hearing before the Court to address the issues noted above.

### ii. Prejudgment interest

Speedway seeks prejudgment interest but has not provided any authority showing that it is entitled to prejudgment interest or explaining how such interest should be calculated. Thus, the Court denies without prejudice Speedway's request for prejudgment interest at this time but will allow Speedway to renew its request in a supplemental motion, as stated in the conclusion of this Order.

### iii. Costs

Speedway next requests costs of court. Pursuant to Federal Rule of Civil Procedure 54(d)(1), a prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the Court provides otherwise. As such, Speedway is entitled to costs in this action. Speedway has not specified the nature or amount of the costs it seeks. Speedway also did not submit a bill of costs. Speedway may submit a request for costs in a supplemental motion, as stated in the conclusion of this Order.

### iv. Attorney's fees

Finally, Speedway requests $8,998.45 in attorney's fees.[4] An attorney's fee award "is governed by the same law that serves as the rule of decision for substantive issues in the case." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis*, 302 F.3d at 461. Because Texas law governs the underlying claims here, Texas law likewise governs Speedway's request for attorney's fees.

---

[4] Speedway requests an additional $1,000 for "an estimated five hours to argue the default, at $200 per hour." (Dkt. #32 ¶ 7). But the Court did not hold a hearing on the motion for default judgment, so this award is unwarranted. To the extent Speedway seeks fees associated with the damages hearing, it may do so in its supplemental motion for attorney's fees. Speedway may also address its request for conditional appellate attorney's fees in the supplemental motion. *See, e.g.*, *Yowell v. Granite Op. Co.*, 620 S.W.3d 335, 355 (Tex. 2020) (stating that a party seeking contingent appellate fees must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services").

Under Texas law, a prevailing party in a civil action may recover attorney's fees in a claim for an oral or written contract. TEX. CIV. PRAC. & REM. CODE § 38.001(8). But "[attorney's] fees are not allowed for torts like fraud." *MBM Fin. Corp. v. Woodlands Op. Co.*, 292 S.W.3d 660, 667 (Tex. 2009). As noted above, it is possible that at least some of Speedway's claims will be subject to the one-satisfaction rule, which may impact the availability of attorney's fees. *See, e.g.*, *Pollitt v. Comput. Comforts, Inc.*, No. 01-17-00067-CV, 2018 WL 4780800, at *2 (Tex. App.—Houston [1st Dist.] Oct. 4, 2018, no pet.) ("[A] party who has suffered a single injury cannot recover exemplary damages under a fraud theory and also recover attorney's fees for breach of contract."). Further, the Texas Supreme Court has held that when a party bringing multiple claims does not prevail on all claims, the party must segregate attorney's fees to the extent feasible. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). As noted above, Speedway cannot prevail on its civil RICO and account-stated claims or its claims against Timothy Horn. Because Speedway did not segregate its fees, the Court declines to award attorney's fees at this time. Speedway may file a supplemental motion for attorney's fees as stated in the conclusion of this Order.

## IV. CONCLUSION

For the foregoing reasons, Speedway's Motion for Default Judgment, (Dkt. #30), is **GRANTED in part and DENIED in part**. The Court will enter its final judgment as to Defendants Tyler Horn, Hernandez, and Hassan by separate order after Speedway is provided an opportunity to supplement the record on its

requested relief and the Court holds a hearing to address issues related to damages, fees, and costs.

It is further **ORDERED** that the Court will conduct an evidentiary hearing on damages on **September 19, 2022,** at **10:00 a.m.**

It is further **ORDERED** that Speedway must file a supplemental motion on damages, prejudgment interest, costs, and attorney's fees by no later than **September 8, 2022**.

**So ORDERED and SIGNED this 18th day of August, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE